IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  09-cv-02626-LTB-BNB

WESTERN CONVENIENCE STORES, INC.,

        Plaintiff,

v.

MATTHEW THIELEN,
INTERNATIONAL EXCHANGE SERVICES, LLC, a Delaware limited liability company, and
TRADEIXS, LLC, a Florida limited liability company,

        Defendants.

_____

ORDER

_____

This matter is before me on motions for summary judgment filed by both parties.

Defendants Matthew Thielen, International Exchange Services, LLC ("IES") and TradeIXS,

LLC ("TradeIXS"), have filed a Motion for Partial Summary Judgment seeking judgment in

their favor on six of the eight claims filed against them.  **[Doc # 31]**  Plaintiff Western

Convenience Stores, Inc. ("Western"), filed its Motion for Summary Judgment seeking judgment

in its favor on all three of Defendants' counterclaims against it.  **[Doc #32]**  Oral arguments

would not materially assist me in the determination of these motions.  After consideration of the

parties' briefs and exhibits, I GRANT Western's motion and I GRANT IN PART AND DENY

IN PART Defendants' motion.

## I.  Statement of Facts

It is undisputed that the parties agreed that Western would sell to Defendant IES a series

of  2,722,782 Renewable Identification Numbers ("RINs") – from years 2008 and 2009 – for

$290,570.15.  An RIN is a 38-character numeric code, generated by the producer or importer of

renewable fuel, that represents each gallon of renewable fuel produced/imported for on-road motor vehicle use.  RINs are used to track the amount of renewable fuel that is being produced.  The transaction was handled by Defendant Matthew Thielen – as the sole officer, director and shareholder of Defendant IES – and Mr. Charles Dowden on behalf of Western.

This agreement was memorialized by a "Confirming Agreement Reached June 30, 2009" (the "Sales Agreement").  Although the actual date of the Sales Agreement is uncertain, it is undisputed that sometime between July 20 and 22, 2009, Western transferred the RINs to Defendant IES.  At that time Western also sent an invoice with wire instructions for payment.  The terms of the Sales Agreement were "Net 10 Business Days Upon R.O.I. [Receipt of Invoice] and Wire Transfer Instructions."  Directly after receiving the RINs from Western, Defendants sold and transferred the RINs to a third-party on July 22, 2009.

On August 3, 2009, Mr. Dowden emailed Defendant Thielen inquiring about the status of payment for the RINs.  In response, Thielen indicated that he was behind on payment.  On August 17, 2009, IES wire transferred $75,000 to Western.  A week later, on August 24, 2009, Mr. Dowden sent the following email to Thielen:

> I tried last Friday, and again today, to reach you to discuss the balance due on the RINs.  Our invoice was due on August 3rd, so it is now three weeks past due.
>
> We feel that we have been very patient, but can wait no longer.
>
> If we do not have payment in full of the balance of $215,532.84 by 12:00 p.m. MDST tomorrow, Tuesday August 25, 2009, we will be returning your payment of $75,000.00 and cancelling the sale of our RINs to your firm. Our preference is to complete the agreed upon sale, but we must have your payment by the designated time tomorrow.

Defendant Thielen responded, on August 25, 2009, via the following email :

> Thank you for your patience with this issue.  I sincerely apologize and wanted to
> let you know that we will not have the full balance by the stated deadline.  I will
> be traveling back to the states today but have a layover at Heathrow and again at
> JFK.  Please email me anything that you need as I will be checking my email
> during the layovers.  Please see the below wire info:

The email then set forth wire information for Defendant IES including its bank name, account

number and routing number, etc.   It is undisputed that, to date, Western has not transferred or

returned the $75,000 and Defendants have not transferred or returned the RINs to Western.

After additional communications between the parties was unsuccessful in settling the dispute,

Plaintiff filed this lawsuit.

Plaintiff Western asserts the following claims against Defendants: (1) Breach of Contract;

(2) Unjust Enrichment; (3) Fraud; (4) Conversion; (5) Civil Theft; (6) Colorado Consumer

Protection Act Violations; (7) Piercing the Corporate Veil against Defendant Thielen; and (8)

Specific Performance.  Defendants assert counterclaims for:  (1) Breach of Contract; (2)

Conversion; and (3) Civil Theft.

## II.  Summary Judgment

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether

trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary

judgment is appropriate if the record reveals that "there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).

When applying this standard, I examine the factual record in the light most favorable to the party

opposing summary judgment, extending to that party all reasonable factual inferences.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the movant carries its burden of showing the absence of a genuine issue of material fact, the non-movant must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

As a federal court with diversity-based jurisdiction, I apply the laws of the forum state in analyzing the underlying claims. *See PayoutOne v. Coral Mortg. Bankers,* 602 F.Supp. 2d 1219, 1223-24 (D.Colo. 2009)(applying Colorado contract law to breach of contract case); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is undisputed that Colorado substantive law controls here.

### III.  Plaintiff Western's Motion for Summary Judgment

I first address Western's motion seeking summary judgment in its favor on Defendants' counterclaims (for breach of contract, conversion and civil theft) which are based on Defendants' position that the parties agreed to cancel their Sales Agreement.

### **Breach of Contract**

Western first seeks judgment in its favor on Defendants' breach of contract counterclaim. Defendants do not dispute the existence or terms of the initial Sales Agreement in which Defendant IES agreed to buy RINs from Western. As an affirmative defense, however, Defendants maintain that they are not liable to Western for any damages related to the uncompleted Sales Agreement because Western and Defendant IES subsequently agreed to *cancel* or unwind the Sales Agreement. Defendants aver that the agreed-upon terms of this

"Cancellation Agreement" were that "Western was to return IES's $75,000 deposit, after which IES would return Western's RINs."  Because Western has not yet returned the $75,000, IES has not yet returned Western's RINs.  As such, Defendants assert that they are not liable to Western. In addition, Defendants assert counterclaims against Western – for breach of contract, conversion and theft – based on the same theory.  Specifically, Defendants maintain that following the Sales Agreement, the parties negotiated a Cancellation Agreement that, in effect, unwound the Sales Agreement.  Because Western did not perform its obligation under the Cancellation Agreement – by failing the return the $75,000 – Western breached the Cancellation Agreement and, by retaining the $75,000, is liable for civil fraud and conversation.

At issue, then, is the legality and enforceability of the alleged Cancellation Agreement made by the parties in August of 2009 following the execution of the initial Sales Agreement, but before its completion.  In Western's motion, it argues that the Cancellation Agreement is not an enforceable contract, as a matter of law, in that: 1) there was no meeting of the minds on the material and the essential terms; 2) it was not supported by consideration; and 3) Defendants couldn't have performed in that it is undisputed that the RINs at issue were no longer in their possession.

Mutual rescission of a contract requires assent to that rescission by both parties obligated under the contract.  *Esecson v. Bushnell,* 663 P.2d 258, 261 (Colo. App. 1983)(*citing Randall v. Carroll,* 488 P.2d 250 (Colo. App. 1971)).  In addition, an agreement to rescind requires a meeting of the minds with "the clear knowledge and understanding of the parties."  *Western Air Lines v. Hollenbeck,* 235 P.2d 792, 796 (Colo. App. 1951).  The same degree of proof of rescission is required as in the case of proof of the contract alleged to have been rescinded, and

5

the burden to prove an agreement to rescind is upon the party alleging it.  *Id.*  Thus "[t]he party

asserting mutual termination has the burden of proof in Colorado."  *Coca-Cola Bottling Co. of*

*Steamboat Springs v. Coca-Cola Co.*, 447 F.2d 635, 637-38 (10th Cir. 1971)(*citing Western Air*

*Lines v. Hollenbeck, supra*).

Western first asserts that there was no meeting of the minds as to the alleged Cancellation

Agreement.  It argues that there was no discussion, let alone any agreement, on the essential

terms of how and when Western would regain possession of its RINs.  This is supported by the

fact that following the August 24 & 25 email exchange, Thielen and Dowden continued

communications on how to resolve the dispute over payment on the Sales Agreement.  And

Defendants did not begin the process of recalling the RINs from the third party it sold them to

until March of 2010.

I agree that the undisputed facts reveal that the parties did not have a meeting of the

minds sufficient to create a valid agreement to cancel their Sales Agreement.  Defendants assert

that the email exchange on August 24 & 25, as well as deposition testimony of Mr. Dowden,

make it clear that the Sales Agreement was cancelled, and that Western would return the $75,000

and, only then, Defendants would transfer RINs to Western.  Defendants also argue that even if

the exchange terms were not definite, those terms were not "essential" to the Cancellation

Agreement because it is customary in the industry for the seller (Western) to return the buyer

(Defendants') "deposit" prior to the return of the RINs.

My review of both the email exchange and Mr. Dowden's deposition testimony reveals

the opposite.  Beyond the fact that the money would be returned via a wire transfer, there is no

agreement of when or how the exchange of the $75,000 for the RINs would occur in the email

exchange.  Neither party asserts that such terms were ever discussed.  The deposition testimony of Mr. Dowden is that while cancellation or rescission of the Sales Agreement was a possible resolution, the parties had not agreed to material terms of the exchange.  There is no evidence of a meeting of the minds; rather, the evidence is clear that when and how the exchange of $75,000 for the return of the RINs was never discussed nor agreed upon by the parties.

More importantly, I also conclude that the alleged Cancellation Agreement is not enforceable because it was not supported by consideration.  Defendants argue that the consideration was that Western would refund Defendants $75,000, and forego any rights that it otherwise may have had under the Sales Agreement and, in return, Defendant IES would return the RINs, and forego any right that Defendants may have otherwise had under the Sales Agreement.  This argument is, in essence, that both parties agreed to forego rights that they otherwise may have retained under the Sales Agreement.

Defendants argument fails to account for the fact that Western had already fully performed on its obligation under the Sales Agreement by transferring all of the agreed upon RINs.   It is axiomatic that if a contract has been executed on one side, an agreement that it shall not be binding is void unless a new consideration is given therefor.  Am Jur. § 537;  C.J.S. *Contracts* § 430;  *see also Colo. Jury Instructions, 4th - Civil* 30:32 Rescission of Cancellation by Mutual Consent – Affirmative Defense (Notes on Use No. 1 "[t]his instruction should not be used when one party has fully performed . . ."); *cf. Wallick v. Eaton*, 134 P.2d 727, 729 (Colo. 1943)(ruling that an executory contract may be mutually cancelled, notwithstanding it has been partially performed, as compared to a contract fully performed by one party).

7

In light of my determinations that there was no meeting of the minds or consideration sufficient to support the alleged Cancellation Agreement, I do not reach or address Western's argument that Defendant could not have performed because the particular RINs at issue had been sold to a third party and Defendants did not initiate the process for recalling the RINs from that third party until at least seven months following the sale.  I conclude that the undisputed evidence is that the Cancellation Agreement – as alleged by Defendants – is invalid as a matter of law for lack of meeting of the minds and consideration.

**Civil Theft & Conversion**

Western also asserts that it is entitled to summary judgment on Defendants' counterclaims for civil theft and conversion.  Western argues that the only possible basis for a theft or conversion claim would be a finding that the Cancellation Agreement is valid and enforceable.  Because the Cancellation Agreement is not enforceable, as a matter of law, Western asserts that is was entitled to retain possession and exercise control over the $75,000 as partial payment due under the Sales Agreement.   And, so, Defendants' claims for theft and conversion of that $75,000 are not sustainable.

Defendants' sole argument in response is that Western has wrongfully refused to return to them the $75,000 "deposit" in violation of the terms of their Cancellation Agreement.  Defendants assert that because there is an genuine issue of material fact as to the validity of the Cancellation Agreement, I cannot grant summary judgment on the theft and conversion claims.

The parties arguments here are admittedly dependant on my conclusion related to the validity of the Cancellation Agreement.  Because I have determined that the alleged Cancellation Agreement is invalid as a matter of law – for lack of meeting of the minds and consideration – I

also conclude that Western is entitled to summary judgment on Defendants' counterclaims for civil theft and conversion.  Accordingly, I grant Western's motion as to all Defendants' counterclaims.

### IV.  Defendants' Motion for Partial Summary Judgment

I next address Defendants' motion seeking partial summary judgment on Western's claims against for:  Breach of Contract;  Fraud; Conversion; Civil Theft; Colorado Consumer Protection Act Violations; and Piercing the Corporate Veil.  Defendants do not seek summary judgment on Western's claims for Unjust Enrichment and Specific Performance.

**Breach of Contract**

Defendants first assert that they are entitled to judgment on Western's claim for breach of contract, as a matter of law, again on their theory that Western rescinded the Sales Agreement. Specifically, they assert that, under the undisputed facts of this case, Western has elected to cancel and rescind the Sales Agreement and, thus, no legal action for breach of contract can be maintained.  However, as discussed above, I have determined that the parties did not, as a matter of law, enter into a valid agreement to cancel or rescind the Sales Agreement.  As a result, I deny Defendants' request seeking summary judgment in their favor on Western's breach of contract claim.

**Fraud**

Defendants next argue that they are entitled to summary judgment on Western's tort claim for fraud/negligent misrepresentation because "the fraud claim is simply a reconstituted claim for breach of contract" in that the "fraud" alleged in this case by Western is merely Defendants'  failure to pay on the Sales Agreement.  Thus, as a matter of law, this is purely a

contract claim and no tort claim exists.  I agree.

Colorado uses the economic loss rule "to maintain the boundary between contract law and tort law."  *Level 3 Communications, LLC v. Liebert Corp.,* 535 F.3d 1146, 1162 (10th Cir. 2008)(*citing Town of Alma v. Azco Constr., Inc.,* 10 P.3d 1256, 1259 (Colo. 2000)).  That rule provides that no cause of action lies in tort when purely economic damage is caused by negligent breach of a contractual duty.  Thus, the rule prevents recovery for negligence when the duty breached is a contractual duty and the harm incurred is the result of failure of the purpose of the contract.  *Town of Alma v. Azco Const., supra,* 10 P.3d at 1261.

The "proper focus in an analysis under the economic loss rule is on the source of the duties alleged to have been breached."  *Level 3 Comm. v. Liebert, supra,* 535 F.3d at 1162 (*quoting Grynberg v. Agri Tech, Inc.,* 10 P.3d 1267, 1269 (Colo. 2000)).  In order to determine the source of the duty at issue, the Colorado Supreme Court has identified the following three factors:  (1) whether the relief sought in negligence is the same as the contractual relief; (2) whether there is a recognized common law duty of care in negligence; and (3) whether the negligence duty differs in any way from the contractual duty.  *Grynberg v. Agri Tech, supra,* 10 P.3d at 1269; *see also BRW, Inc. v. Dufficy & Sons, Inc.,*  99 P.3d 66, 74 (Colo. 2004).

In its complaint, Western avers that Defendants "made false representations of material fact in July and August 2009; specifically, that they would pay Western $290,569.15 per the terms of the [Sales Agreement] for the RINs when, in fact, they had no present intention to do so." Western further asserts, in response to this motion, that its misrepresentation claim is based on Defendants' breach of the duty of reasonable care or competence in obtaining or communicating information in a business transaction; specifically, Defendant Thielen's failure to

communicate that he did not have the money to pay for the RINs as contracted to do.  *See Zimmerman v. Dan Kamphausen Co.*, 971 P.2d 236, 240 (Colo. App. 1998)(in a claim for negligent misrepresentation, the plaintiff must "demonstrate that the defendant supplied false information in a business transaction and failed to exercise reasonable care or competence in obtaining or communicating the information upon which other parties justifiably relied").

 "A promise concerning a future act, when coupled with a present intention not to fulfill that promise, can be actionable fraud."  *H & H Distributors, Inc. v. BBC Intern., Inc.,* 812 P.2d 659, 662 (Colo. App. 1990).

While I agree that there is a recognized common law duty of reasonable care in communicating information in a business transaction, the breach of that duty as alleged in this case does not differs in any way from the contractual duty; namely Defendants' duty to perform by paying for the RINs received.  Moreover, it appears that the relief sought in negligence is the same as the contractual relief.  Thus, I conclude that Western's negligent misrepresentation claim in this case – based on Defendant Thielen's failure to communicate that he did not have the money to pay for the RINs as contracted for – arises from a contractual duty that does not exist independent of the contract.  *H & H Distributors v. BBC Intern., supra,*  812 P.2d at 662 ("[a] claim for the tort of fraud cannot be predicated upon the mere nonperformance of a promise or contractual obligation or upon the failure to fulfill an agreement to do something at a future time")(*citing State Bank of Wiley v. States*, 723 P.2d 159 (Colo. App. 1986)).  As a result, I agree with Defendants that the economic loss rule bars the fraud/negligent misrepresentation claim in this case as a matter of law.  *See generally A.C. Excavating v. Yacht Club II Homeowners Association., Inc.,* 114 P.3d 862, 866 (Colo. 2005) (whether the defendant owed the plaintiff a

duty of care external to the contract is a question of law to be determined by a court).

## Conversion and Civil Theft

Defendants also maintain that they are entitled to summary judgment on both the conversion and civil theft claims asserted by Western for their retention of the RINs.  Conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another."  *Glenn Arms Assocs. v. Century Mortgage & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984).  Likewise, Colorado law provides that a "person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization . . . and [i]ntends to deprive the other person permanently of the use or benefit of the thing of value."  Colo. Rev. Stat § 18-4-401(1)(a); *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. App. 2009)(to succeed on a civil theft claim, the plaintiff has to establish that:  "(1) defendant knowingly obtained control over his property without authorization and (2) defendant did so with the specific intent to permanently deprive him of the benefit of the property").

In its complaint, Western asserts that Defendants have converted the RINs for their own use, exercised control over them, and have failed to return them.  In support of this motion, Defendants argue that Western cannot sustain those claims because they had initial authorization to possess the RINs, and their subsequent retention thereof was – and continues to be – in good faith related to a legitimate contract dispute.  *See Glenn Arms  v. Century Mortgage, supra,* 680 P.2d at 1317 (a defense to a conversion claim is established when a qualified refusal to return "occurs under conditions which render that refusal reasonable . . .  it must be asserted in good faith and in recognition of the rights of the party to whom the property lawfully belongs")(*citing*

*Obodov v. Foster*, 97 P.2d 426 (Colo. 1939)).  In response, Western argues that while Defendants' possession of the RINs was initially authorized, such possession became unreasonable and wrongful when they failed to pay for them.  *See generally Easy Street Corp. v. Parmigiani Fleurier SA,* 2007 WL 2288187 (D. Colo. 2007)(unpublished)(possession did not become wrongful until the defendant refused to pay for the goods returned by the plaintiff).

I conclude, however, that Western's claims for conversion and civil theft are precluded by application of Colorado's economic loss rule.  In *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186,  (Colo. App. 2008), a panel of the Colorado Court of Appeals ruled that civil theft and conversion claims were not barred by the economic loss rule where:  1) the investment manager stole escrowed monies  for his personal benefit; and (2) the investor "ha[d] no contractual remedy" because the manager was not a party to the investment contract.  *Id.* at 1194-95.

In this case, however, Western's contract and theft claims are "inextricably intertwined [in that] the latter could not be proven without first proving the former."  *Makoto USA, Inc. v. Russell,*  2009 WL 4069579, 3 (Colo. App. 2009)(unpublished)(overturning a civil theft claim when it was duplicative of the breach of contract claim).   Because the economic loss rule precludes contract cases from being "recast as tort cases in order to escape the limitations that the law has placed on suits for breach of contract," it served to bar the theft claim.  *Id.* (*citing* Richard A. Posner, *Common-Law Economic Torts: An Economic and Legal Analysis*, 48 Ariz. L.R. 735, 745 (2006)).  *See also Gross v. Silverberg,* 2010 WL 5147594 (D. Colo. 2010) (unpublished)(noting that regardless of whether the claim was plead as a claim for civil theft or conversion, it was barred by the economic loss rule as it was "based on plaintiffs' failure to receive the benefit of the bargain for which they contracted").  Consequently, Western's tort

13

claims for conversion and civil theft are precluded by application of the economic loss rule and, thus, Defendants are entitled to summary judgment on those claims.

## CCPA Violations

Defendants next argue that they are entitled to summary judgment, as a matter of law, on Western's claim that they violated the Colorado Consumer Protection Act  (the "CCPA") by engaging in deceptive trade practices as prohibited by Colo. Rev. Stat. § 6-1-105.

Western's complaint avers that Defendants:  1)  knowingly made false representations as to the characteristics, uses, benefits, alterations, or quantities of their services, in violation of § 6-1-105(1)(e); 2) advertised services with intent not to sell them as advertised, in violation of § 6-1-105(1)(i); and 3) failed to disclose material information concerning their services, which information was known at the time of contracting, and such failure to disclose such information was intended to induce Western to enter into a transaction, in violation of § 6-1-105(1)(u).

To prevail on a CCPA claim, a claimant must show that:  1) the defendant engaged in an unfair or deceptive trade practice; 2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; 3) it significantly impacts the public as actual or potential consumers of the defendant's goods, services or property; 4) the plaintiff suffered injury in fact to a legally protected interest; and 5) the challenged practice caused the plaintiff injury.  *Alpine Bank v. Hubbell,* 555 F.3d 1097, 1112 (10th Cir. 2009)(*citing Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)).  Defendants first argue that Western does not have a viable claim in that the CCPA does not apply to disputes that are private wrongs that have no public impact. Additionally, Defendants argue that the CCPA only applies when the alleged violator provides a

good or service, which is undisputed is not the case here.

Although Mr. Dowden testified at his deposition that Defendants did not provide a service or sold any product to Western, it now argues that the definition of goods and services governed by the CCPA should be broadly construed to include Defendants' business of brokering RINs. *See e.g. People ex rel. MacFarlane v. Alpert Corp.* 660 P.2d 1295, 1297 (Colo. App. 1982) ("goods or services" must be read in light of broad legislative purpose of the CCPA to include real property); *see also Showpiece Homes Corp. v. Assurance Co. of America*, 38 P.3d 47, 58 (Colo. 2001)(ruling that the sale of insurance is a sale of services subject to the CCPA).

Regardless of whether the term "goods and services" in the CCPA was intended to apply to the circumstances here, it is clear that this was a private transaction and that the practices alleged did not significantly impact the public. *See Sewell v. Great Northern Ins. Co.*, 535 F.3d 1166, 1173-4 (10th Cir. 2008). To determine whether a practice challenged under the CCPA significantly impacts the public, courts should consider: "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Alpine Bank v. Hubbell, supra*, 555 F.3d at 1112 (*quoting Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003)).

The wrongs alleged here are private in nature, and do not affect the public; as such, they are not actionable under the CCPA. The sole evidence relied upon by Western is the inference that Defendants have been involved in other disputes related to the buying and selling of RINs. This evidence is insufficient to show impact on the public. *See Alpine Bank v. Hubbell, supra,*

555 F.3d at 1113 (affirming summary judgment on CCPA claims when the record did not contain significant evidence that the alleged deceptive promise had harmed other borrowers in the past or was likely to do so in the future); *Brodeur v. Am. Home Assur. Co.,* 169 P.3d 139, 156 (Colo. 2007)(finding that the record included no "evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future").   I also reject Western's unsupported claim that it is in the public interest that the buying and selling of RINs be governed by the CCPA.   Therefore, I conclude that Defendants are entitled to summary judgment on Western's claim they engaged in deceptive trade practices under the CCPA.

**Piercing the Corporate Veil**

Finally, Defendants maintain that they are entitled to summary judgment on Western's claim seeking to pierce the corporate veil against Defendant Thielen personally.

In assessing whether it is appropriate to pierce the corporate veil, a court must make a three-part inquiry. *McCallum Family L.L.C. v. Winger,* 221 P.3d 69, 74 (Colo. App. 2009).  The first step is a determination of whether the corporate entity is the alter ego of the shareholder. *In re Phillip,* 139 P.3d 639, 644 (Colo. 2006).  An alter ego relationship exists when the corporation is a "mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist." *Krystkowiak v. W.O. Brisben Co., Inc.,* 90 P.3d 859, 867 n. 7 (Colo. 2004).  The second step is a determination of whether justice requires recognizing the substance of the relationship between the shareholder and corporation over the form because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim." *Contractors Heating & Supply Co.,*

16

432 P.2d 237, 239 (Colo. 1967).  And third, the court must evaluate whether an equitable result will be achieved.  *Water, Waste & Land, Inc. v. Lanham*, 955 P.2d 997, 1004 (Colo. 1998); *see also In re Phillip*, *supra*, 139 P.3d at 644 (achieving an equitable result is the paramount goal of traditional piercing of the corporate veil).

Defendants' sole challenge on summary judgment is Western's ability to meet the first step, which is a determination of whether the corporate Defendants are the alter ego of Defendant Thielen.   Defendants maintain that Western's evidence is insufficient to meet the threshold for alter ego liability.  *See Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1221 (10th Cir. 1997)(indicating that although the determination is primarily a question of fact, a verdict as a matter of law may be justified where the facts, viewed most favorably to the party seeking to pierce the veil, do not justify such a result)(*quoting Boughton v. Cotter Corp.*, 65 F.3d 823, 836 n.22 (10th Cir. 1995)); *see also Jarnagin v. Busby, Inc.*, 867 P.2d 63, 69 (Colo. App. 1993)(upholding summary judgment when the plaintiff's evidence, even if proven, was insufficient to make out a *prima facie* case to pierce the corporate veil).

In response to the motion, Western asserts that the following facts support an alter ego determination in favor of piercing the corporate veil:  Defendant Thielen is the sole owner, operator, officer, and shareholder of Defendants IES & TradeIXS, and was the primary person running such entities; Thielen has sole decision making authority for IES and TradeIXS; Thielen contributed his personal funds to finance IES; Thielen did not maintain enough money in the bank account of IES to cover its contractual obligations; Thielen used IES's money to pay for a vintage car, a Chevrolet Camero, a trip to France, home furnishings, his rent, clothes, and various personal expenses; and IES and TradeIXS operate interchangeably.

17

In challenging the admissibility of the evidence relied upon by Western, Defendants first argue that Western provides no foundation related to the deposition testimony of Luis Bustamante, whose testimony supports an inference that Defendant Thielen used Defendant IES's money for his own personal use.  Defendants maintain that Mr. Bustamante's deposition testimony is "so lacking in specificity as to be worthless" and is too vague to be accepted for assessing factual disputes on summary judgment.  *See BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.,* 194 F.3d 1089, 1101 (10th Cir. 1999) (rejecting a summary judgment affidavit that lacks specificity and "contains sweeping, conclusory statements . . . but does not mention any single transaction, date or person").   As such, Defendants assert that Mr. Bustamante's deposition testimony is without foundation, constitutes hearsay to the extent that it is based on phone calls from unidentified third parties, and is "ultimately without probative value" in that "it creates no admissible issue of fact."

I disagree that Mr. Bustamante's deposition testimony is not competent evidence on summary judgment.  I first note that the authority cited by Defendants relates to the use of supporting *affidavits* as summary judgment evidence.  The civil rules provide that a party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions.  Fed. R. Civ. P. 56(c)(1).  Although "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence," that is not the case here where the deposition testimony certainly may be admissible at trial.  Fed. R. Civ. P. 56(c)(2).  "[T]he nonmoving party need not produce evidence "in a *form* that would be admissible at trial," . . . but the content or substance of the evidence must be admissible."  *Thomas v. International Business Machines,* 48 F.3d 478,

485 (10th Cir.1995)(*quoting Celotex Corp. v. Catrett, supra,*  477 U.S. at 324).

In addition, I reject Defendants' argument to the extent they assert that each fact alleged by Western does not, in and of itself, support an alter ego determination as it constitutes a proper or legal way to conduct business.  For example, Defendants maintain that Western does not recite any legal authority as to why Defendant Thielen's sole decision making authority on behalf of his corporations is relevant to the alter ego analysis.  However, it is the cummulative effect of the owner actions that are relevant to the determination of whether the corporation is a mere instrumentality for owner's own personal affairs, and whether there is such unity of interest in ownership that the separate personalities no longer exist.   Each action – whether a legal act or not – is has a bearing on the assessment, even if standing alone they are not dispositive.

In making an alter ego determination, courts are to consider a variety of factors including whether:  the corporation is operated as a distinct business entity; funds and assets are commingled; adequate corporate records are maintained; the nature and form of the entity's ownership and control facilitate misuse by an insider; the business is thinly capitalized; the corporation is used as a "mere shell;" shareholders disregard legal formalities; and corporate funds or assets are used for non-corporate purposes.  *Newport Steel Corp. v. Thompson*, 757 F. Supp. 1152, 1156 (D. Colo. 1990).

It is clear that only extraordinary circumstances justify disregarding the corporate entity to impose personal liability, *see McCallum Family v. Winger, supra,* 221 P.3d at 74, and that "courts generally are less likely to pierce a corporate veil when a consensual, contract-like transaction."  *Yoder v. Honeywell, supra,* 104 F.3d at 1222.  I conclude, however, that the facts presented by Western – when viewed in the light most favorable it and extending to it all

reasonable factual inferences – are sufficient to show a *prima facie* case of proving an alter ego relationship on summary judgment.  Western has set forth some evidence that the corporations acted as a single entity, out of the same offices, that Defendant Thielen is the sole owner of both corporate Defendants, that Defendant IES might have been thinly capitalized, and that corporate funds were used for non-corporate purposes.  While Defendants have set forth contradictory evidence, I conclude that such conflicts of evidence constitute genuine issues of material fact, with regard to whether Defendant Thielen was the alter ego of the corporate Defendants, in order to preclude summary judgment.  *See Ziegler v. Inabata of America, Inc.*, 316 F.Supp.2d 908, 918 (D.Colo. 2004)(ruling that the plaintiff provided evidence, by a narrow margin, to withstand dismissal on summary judgment of his veil-piecing claim, but that "substantially more will be required during litigation in order to prevail").

ACCORDINGLY, I GRANT the Motion for Summary Judgment filed by Plaintiff Western Convenience Stores, Inc.  [**Doc #32**]  As a result, I enter summary  judgment in favor of Plaintiff on Defendants' counterclaims for:  Breach of Contract (Defendants' First Claim for Relief); Conversion (Defendants' Second Claim for Relief); and  Civil Theft (Defendants' Third Claim for Relief).

In addition, I GRANT IN PART AND DENY IN PART the Motion for Partial Summary Judgment filed by Defendants Matthew Thielen, International Exchange Services, LLC, and TradeIXS, LLC.  [**Doc # 31**]  As such, I enter summary judgment in favor of  Defendants on Plaintiff's claims for:  Fraud (Plaintiff's Third Claim for Relief); Conversion (Plaintiff's Fourth

Claim for Relief); Civil Theft (Plaintiff's Fifth Claim for Relief); and Colorado Consumer

Protection Act Violations (Plaintiff's Sixth Claim for Relief).


Dated:  March   14  , 2011, in Denver, Colorado.


BY THE COURT:


  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE